Filed 3/24/25  Friends of Oceano Dunes v. Cal. Coastal Commission CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FRIENDS OF OCEANO DUNES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA COASTAL COMMISSION et al.,<br><br>    Defendants and Appellants;<br><br>DEPARTMENT OF PARKS AND RECREATION,<br><br>    Defendant and Real Party in Interest;<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>    Real Party in Interest. | 2d Civil No. B330994<br>(Super. Ct. No. 21CV-0214)<br>(San Luis Obispo County) |

| | |
|---|---|
| ECOLOGIC PARTNERS, INC., et al. | (Super. Ct. Nos. 21CV-0219) (San Luis Obispo County) |
|     Plaintiffs and Appellants, | |
| v. | |
| CALIFORNIA COASTAL COMMISSION et al., | |
|     Defendants and Appellants; | |
| DEPARTMENT OF PARKS AND RECREATION et al., | |
|     Defendants; | |
| COUNTY OF SAN LUIS OBISPO, | |
|     Real Party in Interest. | |
| FRIENDS OF OCEANO DUNES, | (Super. Ct. Nos. 21CV-0246, 21CV-0541) (San Luis Obispo County) |
|     Plaintiff and Appellant, | |
| v. | |
| CALIFORNIA COASTAL COMMISSION et al., | |
|     Defendants and Appellants; | |
| DEPARTMENT OF PARKS AND RECREATION et al., | |
|     Real Parties in Interest. | |

The California Coastal Commission (Commission) adopted amendments to a coastal development permit (CDP) phasing out off-highway vehicle (OHV) use at Oceano Dunes State Vehicular Recreation Area (Oceano Dunes) and closing one of its entrances. Friends of Oceano Dunes (Friends) challenged the amendments in three petitions for writ of mandate. EcoLogic Partners, Inc., and Specialty Equipment Market Association (collectively, EcoLogic, and collectively with Friends, Plaintiffs) filed another writ petition challenging the amendments. The trial court granted Plaintiffs' petitions, concluding that OHV use at Oceano Dunes could not be eliminated via the CDP amendment because such use was consistent with the local coastal program (LCP) approved by the County of San Luis Obispo (County). The court also concluded that the Commission violated the California Environmental Quality Act (Pub. Resources Code,[1] § 21000 et seq.; CEQA) by failing to evaluate whether closing an entrance to Oceano Dunes would increase the number of vehicle miles traveled (VMT).

On appeal, the Commission contends the trial court erred in finding that it: (1) does not have the authority to ban OHV use at Oceano Dunes via the CDP amendment, and (2) violated CEQA when it did not evaluate the impacts of the amendment on VMT. In its cross-appeal, Friends contends: (3) the Commission's OHV ban violates several provisions of state law by usurping powers the Legislature dedicated to the Department of Parks and Recreation (Department), which operates Oceano Dunes. In its cross-appeal, EcoLogic contends: (4) OHV use is not a "development" for purposes of the California Coastal Act of 1976

---

[1] Unlabeled statutory references are to the Public Resources Code.

(§ 30000 et seq.; Coastal Act or Act), (5) the Commission cannot ban a use predating the Coastal Act, and (6) the Commission cannot ban a use authorized by the Off-Highway Motor Vehicle Recreation Act (§ 5090.01 et seq.; OHV Act).

We disagree with the Commission's contentions and affirm on narrow procedural grounds. We therefore do not resolve any of the contentions in Plaintiffs' cross-appeals. Nor do we resolve amici's contentions[2] or express any opinion as to the cultural, scientific, or policy rationales supporting or opposing an OHV ban. Our conclusion is simply that banning OHV use at Oceano Dunes may not be done via a CDP amendment that contradicts the governing LCP.

## FACTUAL AND PROCEDURAL HISTORY

### Background

In 1971, the Department identified a "critical shortage" of areas available for "dune buggying" in the state. Oceano Dunes was a major center where such activities occurred. That led the Department to establish the first state vehicular recreation area (SVRA) there in 1974.

In 1976, "the Legislature enacted the Coastal Act ' "as a comprehensive scheme to govern land use planning for the entire

---

[2] The Surfrider Foundation, Oceano Beach Community Association, Northern Chumash Tribal Council, Sierra Club, Center for Biological Diversity, and San Luis Obispo Coastkeeper filed an amicus brief in support of the Commission's appeal, while the Santa Ynez Band of Chumash Mission Indians filed an amicus brief in support of the cross-appeal filed by Friends. We deny Friends's request for judicial notice supporting its answer to the Surfrider brief, filed November 25, 2024, because it is unnecessary to our resolution of the issues presented here. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 21.)

4

coastal zone of California." ' [Citation.] The Act mandates careful planning of coastline developments, and requires 'any person wishing to perform or undertake any development in the coastal zone . . . [to] obtain a [CDP]' before [development] commences. [Citation.]" (*Wall v. California Coastal Com.* (2021) 72 Cal.App.5th 943, 948 (*Wall*).) Both "person" and "development" are defined broadly in the Act; the former includes state agencies (§ 21066), while the latter includes any "change in the density or intensity of use of land" or "change in the intensity of . . . access" (§ 30106). A CDP is therefore required before any state agency undertakes an action that changes the intensity of use of or access to a coastal land. (§ 30600, subd. (a).)

"Local governments implement many of the [Coastal] Act's provisions, including the issuance of CDPs, subject to oversight and approval by the Commission." (*Wall*, *supra*, 72 Cal.App.5th at p. 948.) CDPs are issued "in the context of [LCPs]. Each LCP must be developed in consultation with the Commission to ensure that it complies with Coastal Act provisions. [Citation.] Once the Commission certifies an LCP, the local government assumes primary permitting authority, with certain decisions appealable to the Commission. [Citations.]" (*Id.* at p. 949.) Any CDP issued is subject to the imposition of "reasonable terms and conditions" (§ 30607), provided those terms conform to the governing LCP (§ 30600.5).

Chapter 3 of the Coastal Act is titled "Coastal Resources Planning and Management Policies." These policies "constitute the standards by which the adequacy of [LCPs] . . . and the permissibility of proposed developments . . . are determined." (§ 30200, subd. (a).) Included within Chapter 3's policies are special protections for environmentally sensitive habitat areas (§ 30240; ESHAs), defined as "any area in which plant or animal

5

life or their habitats are either rare or especially valuable because of their special nature or role in an ecosystem and which could be easily disturbed or degraded by human activities and developments" (§ 30107.5). Pursuant to the Act, ESHAs "shall be protected against any significant disruption of habitat values." (§ 30240, subd. (a).) Accordingly, "only uses dependent on [ESHA] resources" are allowed within ESHAs. (*Ibid.*) LCPs are presumed to incorporate such restrictions. (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 930-931.)

In 1975, the Department adopted a general development plan (GDP) for Oceano Dunes. (See § 5002.2, subd. (a)(2).) It was subsequently approved by both the Commission's predecessor agency and the County. The GDP sought to minimize conflicts between OHV users and those opposed to OHV use by controlling vehicle access to the park, reducing beach camping densities, and expanding the OHV area. It determined that "active dune" areas between vegetated dunes and stabilized dunes were "tolerant" of OHV use. It also found that OHV use could occur on roughly half of the unstabilized dunes. More limited recreational use was permissible on the stabilized dunes.

In 1982, the Legislature enacted the OHV Act. The OHV Act directs the Department to establish SVRAs "on lands where the need to establish areas to protect natural and cultural resources is minimized, [where] the terrain is capable of withstanding motorized vehicle impacts, and where there are quality recreational opportunities for" OHV use. (§ 5090.43, subd. (a).) The established SVRAs must provide "the fullest appropriate public use of the vehicular recreational opportunities present . . . while providing for the conservation of cultural resources and the conservation and improvement of natural resource values." (*Ibid.*) To that end, "sensitive areas" may be

6

established in SVRAs if they are deemed "necessary to protect natural and cultural resources." (*Id.*, subd. (b).) "If [OHV] use results in damage to any natural or cultural resources or damage within [those] sensitive areas, appropriate measures shall be promptly taken to protect these lands from any further damage." (*Id.*, subd. (c).)

*The LCP, CDP, and their pre-2021 amendments*

Since 1982, OHVs have operated at Oceano Dunes subject to a CDP issued by the Commission. The original CDP authorized the construction of kiosks and the fencing of sensitive habitats, identified areas where OHV use was permitted, limited access at park entrances, and restricted the number of vehicles and campsites in the park. It also directed the Department to undertake an "ongoing" dune vegetation and restoration program. It required annual reviews of the effectiveness of the conditions contained in the CDP, and provided that if the reviews showed that OHV use at Oceano Dunes was "not occurring in a manner [that] protects environmentally sensitive habitats and adjacent community values consistent with the requirements of [the LCP], then OHV access may be further limited."

The County's LCP was certified by the Commission in 1984. It includes two primary components: an overarching document entitled "Coastal Plan Policies," and the "South County Area Plan" that covers most of Oceano Dunes. ESHA Policy 1 in the Coastal Plan Policies provides that "[n]ew development within or adjacent to locations of environmentally sensitive habitats . . . shall not significantly disrupt the resource." ESHA Policy 2 requires a permit applicant "to demonstrate that there will be no significant impact on sensitive habitats and that proposed development or activities will be consistent with the biological continuance of the habitat." The ordinance implementing these

7

policies reinforces these goals, stating that land use permits for projects within or adjacent to ESHAs will not be issued unless there will be "no significant negative impact" on the habitat, the proposed use will be "consistent with the biological continuance of the habitat," and the use "will not significantly disrupt the habitat." It also provides that "[a]ll development . . . within or adjacent to an [ESHA] shall be designed and located in a manner [that] avoids any significant disruption or degradation of habitat values." Most of Oceano Dunes, including all of the OHV riding area, is designated as ESHA.

The LCP's Coastal Plan Policies also include recreational provisions. These provisions state that any recreation must "be consistent with protection of significant coastal resources." They call for the development of a recreational carrying capacity, "[t]he total use [Oceano Dunes] can tolerate without a deterioration of the physical and biological environment or the visitors' enjoyment." The carrying capacity is to be "readjusted as conditions warrant."

Specific standards for development at Oceano Dunes are included in the South County Area Plan. These standards recognize that OHV use at Oceano Dunes was already regulated by the area's CDP when the LCP was adopted, and that any continued use would have to comply with CDP restrictions. The standards also prohibit OHV use in certain areas of the park. They recognize, however, that the CDP may not be sufficient to protect Oceano Dunes's ESHA: "Should the terms and conditions of the coastal permit not be enforced or accomplished[,] or should they not be sufficient to regulate the use in a manner consistent with the protection of resources, public health and safety[,] and community values, then under the [C]ounty's police powers . . .

8

imposition of an interim moratorium on [OHV] use may be necessary."

Between its adoption in 1982 and 2001, the CDP governing development at Oceano Dunes was amended five times. In 2001, the Commission undertook a detailed review of ecological research to inform potential new permit conditions. The research revealed that visibly bare areas of Oceano Dunes are an integral part of the ecosystem, partly because the roots of native plants hold the sand in place, resist wind erosion, and promote dune ecosystem formation. For this reason, "the entire dune surface—not just the location where the plants (and animals) are found in any one particular year—must be considered as ESHA." The Commission thus called for long-term dune protection efforts that considered "not just how much use should occur but when and how such use should be managed to protect the sensitive habitats."

These concerns led the Department to propose, and the Commission to adopt, a 2001 CDP amendment that provided "interim" day use limits on OHV use at Oceano Dunes, subject to annual review and renewal by the Commission. The interim limits did not fully mitigate the Commission's concerns about the effect of OHVs on ESHA in the park, however, and the number of acres where OHV use was permitted was gradually reduced.

In 2017, the Commission and the Department agreed to develop a public works plan to replace the CDP for Oceano Dunes. Over the next two years, the Department met with the Commission, held public listening sessions, and drafted an environmental impact report. The draft report noted that the public works plan sought to "strik[e] an acceptable balance between motorized recreation and [the] protection of natural resources while complying with the Coastal Act."

9

By 2019, however, Commission staff had concluded that OHV use at Oceano Dunes was "not an appropriate use." In particular, "it ha[d] become clear that the coastal resource issues and constraints affecting vehicular operations at the [p]ark [were] only becoming more acute, and ha[d] reached a point where it [was] not consistent with the CDP, the Coastal Act, or the LCP for the Commission to continue to allow for ongoing OHV use without changes." Staff thus recommended that the park transition away from OHV use.

*The 2021 CDP amendments and challenges thereto*

Between October 2020 and March 2021, the Commission held a series of outreach meetings to discuss park issues with community stakeholders. It then set a special hearing to consider changes to the CDP. The staff report for the hearing, which was incorporated into the Commission's adopted findings, found that continued OHV use in the ESHA at Oceano Dunes was inconsistent with both Coastal Act policies and the LCP. Based on this finding, the Commission voted to amend the CDP to phase out OHV use at Oceano Dunes, with a full ban taking effect in 2024. Beach driving by street-legal vehicles and overnight vehicular camping would continue to be permitted at the north end of the park where there is no ESHA. One park entrance would be closed.

Plaintiffs challenged the CDP amendments in a series of petitions for writ of mandate, alleging the Commission had no authority to adopt them. They also alleged that the Commission violated the Coastal Act and CEQA when doing so.

The trial court agreed with Plaintiffs. It found that though the Commission may have the authority to restrict OHV use at Oceano Dunes, it could not eliminate OHV use entirely because such use is consistent with the County's LCP, which "specifically

10

permits" OHV use in EHSA. The court also found that the Commission violated CEQA by failing to evaluate whether the closure of one of the entrances to Oceano Dunes would increase VMT. It entered a judgment in Plaintiffs' favor, and issued a writ directing the Commission to vacate its approval of the CDP amendments.

## DISCUSSION

### *Scope of review*

A party may challenge actions the Commission has taken under the Coastal Act or CEQA in a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. (§§ 21168 [CEQA], 30801, subd. (a) [Coastal Act].) The scope of our review from the judgment on the petition "is the same as that of the trial court. [Citation.] We review the Commission's decision directly, and independently determine whether the Commission proceeded in excess of jurisdiction, whether it provided a fair hearing, and whether it abused its discretion when it [banned OHV use at Oceano Dunes]. [Citations.] The Commission abused its discretion if it did not 'proceed[] in the manner required by law,' if its 'decision [was] not supported by the findings,' or if 'the findings [were] not supported by the evidence.' [Citation.]" (*Wall*, *supra*, 72 Cal.App.5th at p. 951.)

### *OHV use at Oceano Dunes is consistent with the LCP*

The Commission first contends it has authority under the LCP to ban OHV use at Oceano Dunes. We disagree.

Once the Commission certifies a local government's LCP, the local government administers the program and issues CDPs (§ 30519, subd. (a)), subject to oversight and approval by the Commission (*Wall*, *supra*, 72 Cal.App.5th at p. 948). The local government may also amend the LCP. (§ 30514, subd. (a).) The

11

Commission must review the LCP at least once every five years to ensure it conforms with Coastal Act policies. (§ 30519.5, subd. (a).) If the Commission concludes the LCP is not in conformity with these policies it may recommend that the local government amend the LCP. (§ 30519.5, subd. (a).) If the local government declines to do so, the Commission may recommend legislative intervention. (*Id.*, subd. (b).) But it has no power to unilaterally amend the LCP itself. (*Security National Guaranty, Inc. v. California Coastal Com.* (2008) 159 Cal.App.4th 402, 422 (*Security National Guaranty*).)

Here, we conclude the Commission did not have the authority to phase out OHV use by unilaterally amending the Oceano Dunes CDP because the LCP permits such use. The LCP states that one of its goals is to " 'maximize public recreational opportunities' "—including OHV use—at Oceano Dunes. Standard 5 of the LCP's South County Plan specifies where OHVs may access Oceano Dunes; Standard 9 identifies where OHV use is permitted and where it is prohibited; and Standard 8 sets forth which areas should be fenced to prevent vehicular access. Maps included in the LCP delineate these areas, with Standard 11 envisioning the distribution of the maps to OHV users. And Coastal Plan Policy No. 37 of the LCP permits OHV use in "areas identified [as] appropriate for" it. These areas are set forth in the LCP's chapter on recreation, which notes that OHV use is "the dominant recreational element" at Oceano Dunes and "will continue." But such recreation must be "consistent with [the] protection of significant coastal resources," as OHV use has historically led to environmental degradation.

To mitigate this, the LCP states that OHV use at Oceano Dunes is "permitted only in designated areas" that have "controlled" access points. The "location, siting[,] and

12

development" of these areas should be consistent with the area's recreational carrying capacity, "the total use a recreational site can tolerate without a deterioration of the physical and biological environment or the visitors' enjoyment." The LCP notes that some areas can withstand a "high intensity" of use while others "can tolerate only a very low level of use," and includes a chart delineating the capacities of various areas. Those capacities should be "monitored and readjusted as conditions warrant." And should this readjustment prove insufficient to protect "resources, public health and safety[,] and community values, then under the [C]ounty's police powers . . . the imposition of an interim moratorium on [OHV] use may be necessary . . . while long-range planning, development of facilities[,] and requisition of equipment and [labor are] completed."

These provisions make clear that the governing LCP permits OHV use at Oceano Dunes. And while the carrying capacity of different areas of the park may be "readjusted as conditions warrant," any moratorium must come from the County, not the Commission. Or, if it believes the carrying capacity of Oceano Dunes for OHV use is zero, the Commission may urge the County or the Legislature to amend the LCP. But it may not ban such use unilaterally by amending the CDP.

*Security National Guaranty*, *supra*, 159 Cal.App.4th 402 is instructive. In that case, our colleagues in the First District noted that the Legislature allocated the power to amend LCPs to local governments—not the Commission. (*Id.* at pp. 422-423.) Therefore, any action taken by the Commission during an appeal of a permit cannot contradict the terms of the certified LCP. (*Id.* at p. 423.)

That's akin to what happened here. The Commission's attempt to ban OHV use at Oceano Dunes contradicts the plain

13

language of the certified LCP. Such a ban thus amounts to amending the LCP, a power reserved to the County.

The Commission's arguments against these conclusions are unavailing. It first argues the LCP prohibits any use that disturbs ESHAs at Oceano Dunes. But the portions of the LCP the Commission cites in support of its argument—the ESHA policies and their implementing ordinances—refer to preventing *significant* disruption to ESHAs. The LCP seeks to achieve this balance in numerous ways, including by imposing several restrictions on OHV use at Oceano Dunes. The inclusion of such restrictions would make no sense if the LCP banned OHV use altogether. Their inclusion also forecloses the Commission's alternate argument that the LCP bans any use the Commission *finds* to be significantly disruptive to ESHAs; such a finding would be inconsistent with the LCP's OHV restrictions. This is not to say that the Commission's unchallenged finding that OHV use significantly disrupts ESHAs is wrong; it is just not consistent with the LCP as currently written.

The Commission next argues the recreation policies and maps designate the minimum area closed to OHV use, but do not permit it. But again, such use is implied. The provisions would be superfluous if the LCP did not permit OHV use.

Next, the Commission argues the LCP establishes no recreational carrying capacities; the chart that includes those is included for " 'background purposes only.' " But Coastal Plan Policy No. 37 permits OHV use in "areas identified [as] appropriate for" it, and then cross-references the LCP's section on recreation—where the carrying capacities are found. Several other sections of the LCP do the same. The capacities are incorporated by reference.

14

The Commission counters that even if the carrying capacity numbers are more than background information they have been rejected by the LCP. We are not persuaded. One section of the LCP the Commission cites in support of its claim discusses the Department's staffing needs. The other refers to camping, not OHV use. And other sections of the LCP envision monitoring and readjusting the carrying capacity numbers; there would be no need to do so if the LCP had rejected them.

Finally, the Commission claims the LCP permits a permanent—not just "interim"—ban on OHV use at Oceano Dunes. But regardless of the temporal length of any OHV ban, the clear language of the LCP dictates that it is the County, not the Commission, that must impose it. We therefore conclude that the Commission proceeded in excess of its jurisdiction when it banned OHV use at Oceano Dunes via a CDP amendment.

*CEQA violation*

In addition to banning OHV use, the Commission closed the Pier Avenue entrance to Oceano Dunes when amending the CDP. The trial court found that this violated CEQA because the Commission did not evaluate the closure's impact on VMT in and around the park. (See Cal. Code Regs., tit. 14, § 15064.3, subd. (a) [CEQA requires evaluating a project's transportation impacts].) The Commission did not challenge the substance of that finding during the proceedings below, but instead claimed the VMT issue was forfeited because it was not raised during the administrative proceedings. (Citing § 21177, subd. (a).) It raises the same claim here.

The " '*exact issue*' " raised in a CEQA writ petition must have been presented to the administrative agency. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 890.) But it is " 'not necessary to identify the

15

precise statute at issue, so long as the agency is apprised of the relevant facts and issues.' " (*Ibid.*)  Here, during the consideration of the CDP amendment the Commission's vice chairperson asked whether Commission or Department staff had studied the traffic impacts of closing the Pier Avenue entrance. The Oceano Dunes park superintendent raised similar questions. And the Commission staff report noted that closing the entrance would require park users to drive further to reach OHV use and camping areas.  We conclude that was sufficient to apprise the Commission of the relevant facts and issues.  (*Ibid.*)  The issue is not forfeited.

Alternatively, the Commission argues there was no need to evaluate the Pier Avenue entrance's closure on VMT because the closure would decrease miles traveled.  But the Commission did not raise this argument during the proceedings below; it claimed that the closure would decrease traffic *congestion*.  We do not resolve new arguments for the first time on appeal.  (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1325 (*Habitat Trust*).)

Finally, the Commission claims that any CEQA violation related to the Pier Avenue entrance's closure was not prejudicial. Again, however, the Commission did not raise this claim during the proceedings below.  And this court is ill-suited to undertake the factually intensive analysis to resolve it.  The claim is forfeited.  (*Habitat Trust, supra,* 175 Cal.App.4th at p. 1325; see also *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 [forfeiture doctrine to be "stringently applied when the new theory depends on controverted factual questions"].)

DISPOSITION

The August 7, 2023, judgment granting Plaintiffs' petitions for writ of mandate and commanding the Commission to vacate

16

its 2021 decision amending the 1982 CDP is affirmed.  Plaintiffs shall recover their costs on appeal.

NOT TO BE PUBLISHED.


                              BALTODANO, J.


We concur:



            GILBERT, P. J.



            YEGAN, J.

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____

Environmental Law Clinic / Mills Legal Clinic at Stanford Law School, Deborah A. Sivas, Amanda D. Zerbe, Matthew M. Benjamin, Noah S. Rothman; Shute, Mihaly & Weinberger, William J. White, Mindy K. Jian and Jenna Archer for Defendants and Appellants California Coastal Commission and John Ainsworth.

Earthjustice, Sean B. Hecht and Elizabeth A. Fisher for The Surfrider Foundation, Oceano Beach Community Association, Northern Chumash Tribal Council, Sierra Club, Center for Biological Diversity and San Luis Obispo Coastkeeper as Amici Curiae on behalf of Defendants and Appellants California Coastal Commission and John Ainsworth.

Law Offices of Thomas D. Roth and Thomas D. Roth for Plaintiff and Appellant Friends of Oceano Dunes.

Law Office of Maribel Aguilera and Maribel Aguilera for Santa Ynez Band of Chumash Mission Indians as Amicus Curiae on behalf of Plaintiff and Appellant Friends of Oceano Dunes.

Gatzke Dillon & Ballance and David P. Hubbard for Plaintiffs and Appellants EcoLogic Partners, Inc. and Specialty Equipment Market Association.